# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLIFTON MASON, SHERRIAH MASON and FLORENCE MASON, <br>                Plaintiffs, <br><br> v. <br><br> AMERICAN WATER RESOURCES, LLC, <br>                Defendant. | CIVIL ACTION <br><br><br><br> NO.  23-4293 |

Hodge, J.                                                                                                              April 15, 2025

## MEMORANDUM

This case arises from Plaintiffs' Florence, Sherriah, and Clifton Mason's (collectively, "Plaintiffs" or "the Masons") claims against Defendant American Water Resources, LLC ("AWR") for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Breach of Contract, and Fraud and Intentional Misrepresentation. (*See generally* ECF No. 1-3.) The Masons were initially represented by counsel, however, their attorneys filed a motion to withdraw as counsel shortly after the case was removed to federal court. (ECF No. 4.) Since then, the Masons have proceeded *pro se*. Unfortunately, the relationship between the Masons and counsel for AWR has deteriorated over the lifespan of this lawsuit, and AWR has now filed two Motions for Sanctions against the Masons. (ECF Nos. 54, 61.) For the following reasons, AWR's Motion is granted. This case shall be dismissed with prejudice. However, the Court declines to impose monetary sanctions on Plaintiffs.

1

I.   **BACKGROUND**

   a. **Factual Background**[1]

The Masons initially brought this lawsuit in September 2023 in the Chester County Court of Common Pleas, and Defendant then removed the case to federal court in November 2023. (*See* ECF No. 1.) The underlying claims are, briefly, as follows: Plaintiffs purchased a "Combo Water and Sewer Line Protection Program" ("the warranty") in 2019, and made monthly payments for the program. (ECF No. 1-3 ¶¶ 7-8.) Plaintiffs allege that they were not provided with terms and conditions of the protection program at the time of purchase, nor at any other point until three years later. (*Id.* ¶¶ 10-11.) The purpose of the protection program is to cover repairs of a property's water, sewer, supply, and drainage systems. (*Id.* ¶ 14.) In or around January 2022, a snow storm caused Plaintiffs' sewer pipe to crack, leading to sewage backing up into their home. (*Id.* ¶ 21.) Plaintiffs made a claim to AWR for a repair two days after the snow storm. (*Id.* ¶ 22.) AWR sent Roto-Rooter plumbing specialists to examine the damage; they assessed the repair at approximately $30,000, and told Plaintiffs the repair would be covered under their warranty. (*Id.* ¶¶ 23-26.) AWR then proceeded to send additional repair specialists over several months, which Plaintiffs allege was in furtherance of its effort to deny Plaintiff's claim under the warranty. (*Id.* ¶¶ 27-37.) However, representatives of Defendants did confirm to Plaintiffs on the telephone that the repair would be covered by the warranty. (*Id.* ¶ 40.)

These back-and-forth communications continued for nearly all of 2022, during which time the Masons did not have functional plumbing or sewer lines in their home. (*Id.* ¶¶ 38-51.) On December 7, 2022, AWR denied the Mason's claim and rejected a proposal from Roto-Rooter to repair the damage. (*Id.* ¶ 57.) Plaintiffs allege the denial was the first time they were provided with

---

[1]   The Court adopts the pagination supplied by the CM/ECF docketing system.

the warranty's terms and conditions. (*Id.* ¶ 58.) The Masons continued to dispute the denial with AWR. (*Id.* ¶ 61-69.) Plaintiffs allege in their complaint that they have not had working plumbing in their home since January 2022, have had continual water leaking, and are unable to use their shower. (*Id.* ¶ 73-74.) The home also sustained water damage. (*Id.* ¶ 77.)

Plaintiffs ultimately filed this lawsuit, alleging that AWR violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, as well as claims for Breach of Contract and Fraud/Intentional Misrepresentation. (*Id.* ¶¶ 81-120.)

**b. Procedural History**

Shortly after this case was removed from state court in November 2023, AWR filed a Motion to Compel Arbitration, arguing that the dispute must be resolved through arbitration pursuant to a valid Arbitration Clause in the Water Line, Sewer Line, and In Home Plumbing Protection Program agreement (the warranty program the Masons had purchased). (ECF No. 3.) Just three days later, on November 27, 2023, Plaintiffs' attorneys filed a Petition to Withdraw as Counsel, citing an "irretrievable breakdown in the attorney client relationship," and "irreconcilable differences in opinion regarding fundamental issues in this matter." (ECF No. 4 at 1.) The Court held oral argument on the Motion on January 29, 2024, after which the Motion to Withdraw as Counsel was granted. (ECF No. 8.) The Court allowed Plaintiffs several months to secure new representation. However, they were unable to find a new attorney, and since that time have proceeded in this matter *pro se.* (*See* ECF No. 16, 18.) Plaintiffs ultimately filed their opposition to the Motion to Compel Arbitration on September 19, 2024. (ECF No. 25.)

On October 11, 2024, Defendant submitted to the Court a letter stating that "facts surrounding Plaintiff Sherriah Mason's enrollment in the warranty program now appear to be different then what is recited in AWR's Motion to Compel Arbitration," and requesting a 60-day

discovery period on the question of arbitrability of the Masons' claims. (ECF No. 27) The Court granted Defendant's request on the same day, ordering the parties to complete this limited discovery and submit a status report to the Court by December 17, 2024. (ECF No. 28.) The Court also ordered that the pending Motion to Compel Arbitration be dismissed as moot until the question of arbitrability was resolved. (*Id.*) Plaintiffs then appealed to the Third Circuit the Court's order granting the 60-day discovery period on arbitrability (ECF No. 29); however, the Third Circuit dismissed the appeal for failure to pay the filing fee. (ECF No. 33.)

On January 21, 2025, Defendants informed the Court that due to the appeal, Plaintiff Sherriah Mason had not yet been deposed on the arbitrability issue. (ECF No. 36.) Plaintiffs also had not responded to Defendant's emails about the joint status report. (*Id.*) The Court then extended the arbitrability discovery period an additional 60 days, to March 24, 2025. (ECF No. 37.) Following that order, the Masons emailed the Court stating that they were "perplexed that this Court is trying to force us into arbitration when the court has been aware that the opposing party has no basis for arbitration." (*See* January 26, 2025 email from Clifton Mason to J. Hodge Chambers.) The Court then ordered a status conference, with the goal of explaining to Plaintiffs that at that point, there was no pending motion to compel arbitration, rather, the Court had merely allowed the parties to conduct limited discovery on whether arbitration was an option at all. (ECF No. 38.)

The Court held a status conference on February 12, 2025. The Court explained the procedural posture of the case and heard from both parties. Plaintiffs stated that the proceedings felt one-sided, including the arbitrability discovery. The Court explained to the Masons that they had equal opportunity to conduct discovery on the issue of arbitrability, and also informed them that per the Court's prior order, they were required to sit for any deposition on the issue of

4

arbitrability noticed by AWR.[2] Also on the conference, attorneys for AWR expressed frustration about comments the Masons had made in emails and filings about the counsels' ethical practices, and that the Masons had made false accusations about statements the AWR attorneys made, and accused the attorneys of having personal relationships with Judge Hodge that had led to favoritism in the case.

Unfortunately, rather than move the litigation forward, the status conference precipitated a flurry of emails and motions filed by Plaintiffs, including to dismiss the (non-existent) motion to compel arbitration, quash the deposition notices, requesting a meeting with the Chief Judge of the Eastern District of Pennsylvania, filing Freedom of Information Act requests for court documents, and other frivolous requests. (*See* ECF Nos. 39-50.) The Court denied most of these requests, and in its Order, once again ordered Plaintiffs to sit for the depositions on the arbitrability issue. (ECF No. 51.) The Court informed Plaintiffs that until they "participate in the discovery period, including by appearing for a deposition, the Court will not consider any other motions or requests unless there is good cause to do so." (*Id.*)

On February 26, 2025, Defendant AWR filed a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 30(d)(2), under which the Court may impose sanctions on a party who "impedes, delays, or frustrates the fair examination of a deponent." Fed. R. Civ. P. 30(d)(2). Defendant argues that despite this Court's repeated orders for Plaintiffs to participate in the discovery on the issue of arbitrability, Plaintiffs have refused to do so, and dismissal with prejudice is the appropriate remedy. (ECF No. 54-2 at 1.) Defendant asserts that the Masons are personally responsible for their failure to attend depositions, and that their refusal prejudices AWR, which

---

[2] It is this Court's understanding that AWR is seeking only to conduct one deposition, of Plaintiff Sherriah Mason.

5

seeks to move this litigation forward. (*Id.* at 7-8.) The Court entered an order giving Plaintiffs 14 days to respond to the Motion, however, Plaintiffs did not do so. (ECF No. 56.)

AWR then filed a second Motion for Sanctions under Federal Rule of Civil Procedure 11(b) for "Plaintiffs' repeated false, scurrilous, and frivolous contentions to the Court." (ECF No. 61-1.) AWR argues that Plaintiffs' numerous submissions to the Court following the February 12, 2025 conference, which it alleges contain "false, scurrilous, vexatious, and contemptuous allegations" are grounds for imposing Rule 11 sanctions. (ECF No. 61-2 at 5-6.) AWR asks now both for dismissal with prejudice and for reimbursement of AWR's fees and costs. (*Id.*)

Plaintiffs have continued to file numerous motions and requests, including what the Court understands to be a "counter demand for sanctions" against AWR (ECF No. 57); several motions for reconsideration of prior orders granting discovery on arbitrability (ECF Nos. 58-60); and a Motion to Strike. (ECF No. 65.) Some of these ask the Court to take steps outside its purview, for example, requesting documents under the Freedom of Information Act, which does not apply to court documents. (*See, e.g.*, ECF No. 52.) Others include requests that are not cognizable under statute or the Federal Rules of Civil Procedure. (*See, e.g.*, ECF No. 69.) Many also accuse the Court and/or counsel for AWR of engaging in criminal activity. (*See, e.g.*, ECF Nos. 69, 70, 74.)[3]

---

[3] As of the date of this opinion, Plaintiff's outstanding motions and requests are as follows: Exception and Objection to the Court erroneously attempting to give favoritism (ECF No. 44); Motion for leave to file Plaintiff's Objection to Defendant Motion to Compel Arbitration (ECF No. 45); Waiver of Rights- Plaintiff's Preliminary Objection (ECF No. 46); Exhibit H Full BBB Complaint (ECF No. 47); Motion for Court to visit Rules 3 and 4 of FAA (ECF No. 48); Emergency Request for Imperative Remote Conference with C.J. Goldberg (ECF No. 49); Demand to Strike and Quash Discovery for Arbitration (ECF No. 50); Objection in Response to Offer to Withdraw Answer to Sanctions (ECF No. 57); Motion for Reconsideration of Current Erroneous Court Order (ECF No. 58); Pro Se Plaintiffs' Motion for Reconsideration of Order, Etc. (ECF No. 59); Pro Se Plaintiffs' Motion for Reconsideration of Erroneous Court Order (ECF No. 60); Motion to Strike (ECF No. 65); Letter of Retention (ECF No. 67); Letter of Retention (ECF No. 68); Redundant and Impertinent Material to be Stricken Pursuant to Rule 12(f) (ECF No. 69); Plaintiff's Objections to Defense False Claim of Attorney-Client Privilege for FOIA request (ECF No. 70); Motions for Zoom Depositions (ECF No. 72); Motions for Zoom Depositions (ECF No. 73); Requests for Subpoenas (ECF No. 74); Motions for Zoom Depositions (ECF No. 75).

As of the date of this opinion, Plaintiffs have not yet appeared for any deposition, and continue to refuse to do so.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 30 governs depositions by oral examination. Fed. R. Civ. P. 30. Rule 30 provides in great detail the protocol and standards that govern parties, counsel, and witnesses at depositions. *Id.* "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

Federal Rule of Civil Procedure 11 governs the ethical rules of parties making representations to federal courts, and authorizes courts to penalize those who breach the rules. Fed. R. Civ. P. 11. Rule 11(b) states that attorneys *and unrepresented parties* who present pleadings, written motions, or other papers to the court are certifying, "to the best of the person's knowledge, information, and belief, formed after inquiry reasonable under the circumstances," that their filings are not frivolous, meritless, or made in bad faith. Fed. R. Civ. P. 11(b). Rule 11(c) allows a court to impose sanctions on "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). "While a *pro se* complaint is held to less stringent standards than formal pleadings drafted by trained lawyers, *pro se* plaintiffs are not excused from the requirements of Rule 11. A court may take a person's status as a *pro se* litigant into account, however, when considering Rule 11 sanctions." *Martin v. Farmers First Bank*, 151 F.R.D. 44, 48 (E.D. Pa. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1971); Fed.R.Civ.P. 11 Advisory Committee Notes; *Schaffer v. Chicago Police Officers*, 120 F.R.D. 514, 516 (N.D.Ill.1988)).

### III. ANALYSIS

The Court now considers both of Defendant's Motions for Sanctions together. As articulated above, Defendant's February 26, 2025 Motion asks for sanctions under Federal Rule of Civil Procedure 30(d)(2), for Plaintiffs' failure to participate in Court-ordered depositions. (*See generally* ECF No. 54.) Defendant's second Motion asks the court to impose Rule 11 sanctions given Plaintiffs' conduct throughout this case, including causing unnecessary delay, making baseless allegations about defense counsel's conduct, and accusations of fraud upon the court. (*See generally* ECF No. 61.)

At the outset, the Court notes its reluctance to impose sanctions on plaintiffs proceeding *pro se*. The Third Circuit has repeatedly stated, and this Court wholeheartedly agrees, that *pro se* parties should be granted leniency. *See Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (noting that courts "must make reasonable allowances to protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training"); *Tabron v. Grace*, 6 F.3d 147, 153, n.2 (3d Cir. 1993) ("[W]e have traditionally given pro se litigants greater leeway where they have not followed the technical rules of pleading and procedure."). However, in extreme situations, courts have dismissed *pro se* plaintiff's claims. *See Wallace v. Graphic Mgmt. Assocs.*, 197 F. App'x 138, 141 (3d Cir. 2006) (upholding district court's dismissal of *pro se* plaintiff's case for failure to prosecute after plaintiff repeatedly refused to comply with court orders); *Greisberg v. Bos. Sci. Corp.*, 2022 WL 1261318, at *2 (3d Cir. Apr. 28, 2022) (upholding district court's dismissal of *pro se* plaintiff's case for failure to state a claim). Unfortunately, this case has reached a point where dismissal with prejudice is the appropriate action.

As demonstrated by this matter's procedural history, this Court has granted leniency to the Masons throughout this case. The Court allowed Plaintiffs several months to seek new

representation after their first counsel withdrew, and has freely granted extensions. The Court has also held numerous status conferences in the hopes that speaking directly to the parties would allow the case to move forward. However, the case has come to a standstill due entirely to the Masons' refusal to comply with court orders. The Court has issued three separate orders allowing the parties to conduct limited discovery and requiring that the parties participate fully in this discovery. (*See* ECF Nos. 28, 37, 51.) The Court also held a status conference during which the Court explained to the Masons that they were required to participate in depositions. (ECF No. 53.) The Court has taken steps to ensure that Plaintiffs understand that they are permitted to also take depositions on the issue of arbitrability, and to explain to Plaintiffs that their refusal to sit for depositions is impeding their case. (*See* ECF No. 51 ("Equally, should Plaintiffs wish to depose Defendants on the issue of arbitrability, they may do so during the 60-day limited discovery period."); ("Once [the discovery] period is over, assuming Plaintiffs comply with the Court's orders, this case will be able to move forward.").)

Defendants have offered Plaintiffs numerous dates on which to appear for Sherriah Mason's deposition, and agreed to conduct the deposition remotely when Plaintiffs informed them they could not travel to the depositions. Still, Plaintiffs refused to appear. Plaintiffs appealed the Court's order granting the discovery period, as is their right, and the appeal was dismissed. (ECF No. 33.) At this point, as Defendants observe, it is the Masons themselves who are preventing this case from moving forward.

The Court understands that the Masons dispute the notion that they should be compelled to participate in mandatory arbitration, and that their frustration is driving their unwillingness to cooperate. The Court is also sympathetic to the unique challenges of participating in a case *pro se*. However, as the Court has explained to Plaintiffs, there is currently no pending motion to compel

arbitration before the Court. The *only* issue before the Court at present is whether Plaintiffs were in fact notified of the existence of the arbitration provision when they purchased AWR's warranty program, which is what the 60-day discovery period on arbitrability would allow the parties to determine. However, because the Masons refuse to participate in any depositions, neither party has been able to determine the question of arbitrability, and thus, the case cannot move forward to dispositive motions, trial, or even, it appears, settlement negotiations.[4]

The Court also acknowledges the validity of Defendant's arguments in its second Motion for Sanctions. (ECF No. 61.) Rule 11 allows courts to impose sanctions when a party submits filings that are frivolous, false, lacking in evidentiary support, or otherwise improper. Fed. R. Civ. P. 11(b-c); *see also Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir. 1986) ("Rule 11 therefore is intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.'")

Plaintiffs have maligned defense counsel's professionalism and ethics, claiming the attorneys are committing fraud upon the Court, and alleging conflicts of interest between the Court and AWR's attorneys that are baseless and devoid of evidence. Attorneys are held to high ethical standards, and Mr. Kingsley and Ms. Badolato have given this Court no reason to question their ethics or compliance with the Rules of Professional Responsibility. Moreover, no party, including a corporation, should be subjected to endless litigation and frivolous claims. This Court need not comment on the underlying allegations of the Masons' complaint, but it will say that the frequency of the Masons' filings, along with their refusal to comply with this Court's Order, has forced AWR to expend time and financial resources that should not have been necessary in this litigation.

---

[4] The Court is aware of settlement discussions having taken place between the parties based on representations of Defendants in their January 21, 2025 letter (ECF No. 36), as well as Plaintiffs' filing which included email correspondence regarding settlement, which seems to have been reached in principle, but was not executed. (ECF No. 74-2.)

Defendant has requested sanctions in the form of dismissal with prejudice and monetary sanctions including fees and costs. (ECF Nos. 54 and 61.) For all the reasons articulated, most importantly Plaintiffs' unwillingness to move this case forward, the Court will dismiss the case with prejudice. The Court acknowledges that Plaintiffs have engaged in conduct that would likely warrant financial sanctions, particularly if engaged in by an attorney. However, the Court views the Masons' actions as those of frustrated, unsophisticated *pro se* litigants unfamiliar with the practice and substance of the law. Moreover, the Masons have been granted in forma pauperis status, demonstrating their inability to pay court fees. To impose financial penalties would be an unnecessarily punitive step that this Court will not take.

### IV.    CONCLUSION

For the foregoing reasons, AWR's Motions for Sanctions are granted. This case shall be dismissed with prejudice. However, the Court declines to impose monetary sanctions on Plaintiffs. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**